Theodore P. Witthoft (State Bar Id. No. 021632)
**COLLINS, MAY, POTENZA, BARAN & GILLESPIE, P.C.**
201 North Central Avenue, 22nd Floor
Phoenix, Arizona 85004-0608
Telephone: (602) 252-1900
Facsimile: (602) 252-1114
Email: twitthoft@cmpbglaw.com
Attorneys for The Biltmore Bank of Arizona

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>STANLEY THOMAS LUND and JUNE MARIE LUND aka LUND MORTGAGE, INC.,<br><br>Debtors. | **Chapter 7**<br><br>**Case No. 2:09-bk-18416-CGC**<br><br>**Adv. No 2:09-ap-01577 CGC** |
| THE BILTMORE BANK OF ARIZONA,<br><br>Plaintiff,<br><br>vs.<br><br>STANLEY THOMAS LUND and JUNE MARIE LUND,<br><br>Defendants/Debtors. | **MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff, The Biltmore Bank of Arizona ("Biltmore Bank"), by and through its attorneys, Collins, May, Potenza, Baran & Gillespie, P.C., hereby submits its *Motion for Partial Summary Judgment* against Stanley Thomas Lund ("Stanley Lund" or "Mr. Lund") and June Marie Lund (collectively, the "Debtors").

1

The Biltmore Bank is a judgment creditor of Stanley Lund's company Lund Mortgage, Inc. (the "Corporation"). The Corporation became insolvent in September 2007. Subsequent to the Corporation's insolvency, Stanley Lund caused the Corporation to make a series of transfers for his benefit and the benefit of his community in the aggregate amount of $97,018.30. Mr. Lund's actions were in breach of his fiduciary duty to the Corporation's creditors. Consequently, the Debtors are liable to the Corporation's creditors under Arizona's trust fund doctrine. Furthermore, pursuant to 11 U.S.C. § 523(a)(4), Biltmore Bank is entitled to a nondischargeable judgment against the Debtors in the amount of Biltmore Bank's *pro rata* interest in the monetary transfers.

This Motion is supported by the accompanying Memorandum of Points and Authorities, the *Statement of Facts in Support of Motion for Partial Summary Judgment* ("SF") filed concurrently herewith and the entire record before the Court, all of which is incorporated herein by this reference.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **Introduction**

This adversary proceeding involves the transfer of money and personal property ("Assets") of the Corporation for little or no consideration by Stanley Lund. Mr. Lund was the Corporation's designated mortgage broker, President, sole Director and sole shareholder. The Assets were transferred, not to creditors of the Corporation, but to Stanley Lund himself or to entities in which Stanley Lund or his family members held an interest. These transfers occurred after the Corporation became insolvent in September, 2007. [SF §§ 6, 11, 12, 13, 15, 16].

This Motion only pertains to the series of monetary transfers from the Corporation to Stanley Lund totaling $97,018.30. Biltmore Bank seeks partial summary judgment from the Court declaring: (1) the Debtors are liable to the creditors of the Corporation for having received the monetary transfers under Arizona's "trust fund doctrine"; and (2) Biltmore Bank is entitled to a nondischargeable judgment against the Debtors, pursuant to 11 U.S.C. § 523(a)(4), in the amount of Biltmore Banks' *pro rata* interest in the monetary transfers. Biltmore Bank's *pro rata* interest in the transfers remains subject to further disposition along with resolution of the issues concerning the transfer of the Corporation's personal property and the Debtors' right to a discharge.

## **Factual Background**

The Corporation was engaged in the business of obtaining residential home loans. [SF § 5]. In connection with the business of obtaining home loans, Biltmore Bank and the Corporation were parties to a "Wholesale Broker Agreement" which set forth the terms upon which Biltmore Bank agreed to fund loans originated and submitted to Biltmore Bank by the Corporation. [SF § 7]. In March 2007, Biltmore Bank filed a state court lawsuit against the Corporation based upon the breach of the Wholesale Broker Agreement. [SF § 8]. In May, 2009, the state court entered a final judgment against the Corporation, awarding Biltmore Bank the principal amount of $291,046.52 and $10,245.00 for its incurred attorney fees and costs, plus post-judgment interest at the statutory rate of ten percent (10%) on both amounts (the "Biltmore Judgment").

In December 2008, a new entity called Lund Mortgage Team, Inc. ("New Entity") was created to "assist customers in getting residential home loans" with its place of business, domestic address, agent mailing/physical address, telephone number

and website (which lists Stanley Lund as its President/CEO) the same as that of the Corporation. [SF § 11].

Before the Corporation ceased operations, the Corporation transferred the computers, telephones, office machines, and furniture of what had been an operation employing 30 people to a company owned by Stanley Lund's daughter, Lund Realty, L.L.C., but the Corporation only received "nominal" payment for these assets. [SF § 12]. Additionally, the Corporation transferred to the New Entity customer and contact lists, customer records, customer relationships, and customer application files, human-capital related intangible assets such as an in-place workforce, skilled and knowledgeable key employees, and goodwill-related intangible assets such as the business's reputation, patronage, and name recognition for which the Corporation received nothing. [SF § 13].

Stanley Lund also caused funds of the Corporation to be transferred to him or his spouse or daughter loan repayments and/or equity distributions totaling $97,018.30 (the "Monetary Transfers"). [SF § 16]. The Monetary Transfers are the subject of this Motion. The Monetary Transfers include the following:

| **Date** | **Amount** | **Payee** | **Description** | **Check No.** |
|---|---|---|---|---|
| 11/14/08 | 7,290.00 | Stan Lund | Owner Reimbursement | 1140 |
| 11/14/08 | 500.00 | Stan Lund | | 1141 |
| 11/19/08 | 3,575.00 | Stan Lund | Owner Reimbursement | 1149 |
| 11/26/08 | 7,570.00 | Stan Lund | Owner Reimbursement | 1159 |
| 12/01/08 | 3,653.35 | Stan Lund | Owner Reimbursement | 1165 |
| 12/12/08 | 7,940.00 | Stan Lund | Owner Reimbursement | 1187 |
| 12/18/08 | 1,338.71 | Stan Lund | Owner Reimbursement | 1200 |
| 01/02/09 | 1,903.00 | Stan Lund | Owner Reimbursement | 1227 |
| 01/20/09 | 3,120.00 | Stan Lund | Owner Reimbursement | unknown |

4

| | | | | |
|---|---|---|---|---|
| 01/30/09 | 3,571.10 | Stan Lund | Owner Reimbursement | 1320 |
| 02/13/09 | 6,920.75 | Stan Lund | Owner Reimbursement | 1355 |
| 02/27/09 | 4,048.19 | Stan Lund | Owner Reimbursement | 1434 |
| 03/13/09 | 8,570.36 | Stan Lund | Owner Reimbursement | 1472 |
| 03/3109 | 4,048.19 | Stan Lund | Owner Reimbursement | 1518 |
| 04/15/09 | 4,065.41 | Stan Lund | Owner Reimbursement | 1557 |
| 04/15/09 | 1,278.48 | Stan Lund | Owner Reimbursement | 1558 |
| 04/30/09 | 2,923.10 | Stan Lund | Owner Reimbursement | 1617 |
| 04/30/09 | 310.00 | June Lund | Owner Reimbursement | 1618 |
| 05/15/09 | 4,076.22 | Stan Lund | Owner Reimbursement | 1668 |
| 05/15/09 | 3,740.22 | Stan Lund | Owner Reimbursement | 1669 |
| 05/29/09 | 4,076.22 | Stan Lund | Owner Reimbursement | 1714 |
| 05/15/09 | 12,500.00 | Lisa Lund | Gift | 1672 |

**TOTAL**  $97,018.30

The Biltmore Judgment remains due, owing and unpaid. Although there were funds in the Corporation that would have been available to creditors for the repayment of indebtedness, Biltmore Bank was unable to collect its share of those funds, because Stanley Lund caused those funds to be transferred to him or to insiders instead of being paid to creditors. The portion of the Biltmore Judgment that represents Biltmore Bank's *pro rata* share of the Monetary Transfers (which, for the purposes of this Motion, shall be referred to as the "Biltmore Debt") is subject to the Trust Fund Doctrine and should be excluded from a discharge in bankruptcy. [SF §§ 9, 12, 13, 15,16 & 17].

### **Legal Analysis**

To determine a debt is nondischargeable under 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, the plaintiff must establish:

(1) an express trust existed;

(2) the debt was caused by fraud or defalcation; and

(3) the debtor acted as a fiduciary to the creditor at the time the debt was created.

*In re Niles*, 106 F.3d 1456, 1459 (9th Cir. 1997). Here, all elements required to establish the Biltmore Debt is nondischargeable in bankruptcy under 11 U.S.C. §523(a)(4) are supported by indisputable evidence.

### **An express trust existed.**

Arizona law has adopted the trust fund doctrine ("Trust Fund Doctrine"). *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185-86 (9th Cir. 1996); *Valley Bank v. Malcolm*, 23 Ariz. 395, 406, 204 P. 207, 211 (Ariz. 1922). The Trust Fund Doctrine provides that all assets of a corporation, immediately upon that corporation's insolvency, constitute a trust fund that exists for the benefit of the corporation's creditors. *Id.* Under the Trust Fund Doctrine, after a corporation becomes insolvent, no rights may be created, either voluntarily or by operation of law, whereby one creditor is given an advantage over others. *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 29 (9th Cir. BAP 2009) (*citing A.R. Teeters & Assocs. V. Eastman Kodak Co.,* 172 Ariz. 324, 331, 836 P.2d 1034, 1041 (App. 1992)). The Bankruptcy Appellate Panel of the Ninth Circuit held that the Arizona's Trust Fund Doctrine implicated an express trust sufficient for purposes of the application of 11 U.S.C. § 523(a)(4). *Weinberg*, 410 B.R. at 28; *Nahman v. Jacks (In re Jacks)*, 266 B.R. 728 (9th Cir. BAP 2001).

### **The Corporation was insolvent**.

The Arizona statutes governing corporations (A.R.S. §10-120 *et seq*.) define "insolvent" as the inability of a corporation to pay its debts as they become due in the usual course of its business. A.R.S. §10-140 (2). This definition of insolvency is

applicable to actions under 11 U.S.C. §523(a)(4). *Weinberg*, 410 B.R. at 29-30.

Stanley Lund admitted that the Corporation was insolvent as early as September 2007. While under oath, Mr. Lund specifically agreed with the statement that the Corporation was not generally paying its debts as they came due. [SF § 14]. Mr. Lund testified that after September, 2007, the Corporation stopped paying any debts it had previously incurred, having experienced a loss of 25 of its 30 employees because "they weren't bringing any loans in." [SF § 14]. The first of the Monetary Transfers did not occur until November 14, 2008, after the Corporation was admittedly insolvent. [SF § 16].

**<u>Stanley Lund had a fiduciary duty to creditors of the Corporation</u>**.

Generally, directors and officers do not owe a fiduciary duty to creditors of a corporation. *Jacks*, 266 B.R. at 738. However, when a corporation becomes insolvent, a fiduciary duty to creditors of the corporation is imposed on the insolvent corporation's directors and officers. *Id.* That duty is to use the remaining corporate assets for the benefit of creditors. *Id.* Thus, officers become liable to creditors under the Trust Fund Doctrine when a corporation transfers assets of the corporations to the officers while the corporation is insolvent. *Id.*; *Weinberg*, 410 B.R. at 29 *citing Teeters*, 172 Ariz. at 331, 836 P.2d at 1041 (App. 1992) (a director or officer of a corporation breaches a fiduciary duty owed to the company's creditors when corporate assets are transferred to the officer).

Stanley Lund misappropriated and transferred money out of the Corporation to or for the benefit of Stanley Lund or his family members. Even if, as Stanley Lund has claimed, the Corporation owed him money, the Trust Fund Doctrine prohibits transfers of assets to insiders of an insolvent corporation. The theory being that all of

7

Case 2:09-ap-01577-CGC    Doc 19    Filed 04/12/10    Entered 04/12/10 14:03:57    Desc
Main Document    Page 7 of 11

the assets of a corporation, immediately on its becoming insolvent, exist for the benefit of all of its creditors and thereafter no one creditor may be given an advantage over others. *Weinberg*, 410 B.R. at 29 and 34, n.10. Stanley Lund's use of corporate assets for personal gain constitutes defalcation within the meaning of 11 U.S.C. §523(a)(4). *Jacks*, 266 B.R. at 737. His self-dealing created a liability on his part directly to the Corporation's creditors, including the Biltmore Bank. *See Jacks*, 266 B.R. at 736; *Weinberg*, 410 B.R. at 34.

### **The Biltmore Debt was caused by defalcation**.

Federal law defines what constitutes a defalcation. It is a "misappropriation of trust funds or money held in any fiduciary capacity (and the) failure to properly account for such funds." *Niles*, 106 F.3d at 1460; *Lewis*, 97 F.3d at 1186. Using corporate funds for personal use would constitute defalcation when the corporation is insolvent. *Jacks*, 266 B.R. at 737-38. Stanley Lund does not contest that he caused the Corporation to make the Monetary Transfers to him or his family members after the corporation became insolvent.

Intent is not an issue. In *Lewis*, the Ninth Circuit held that defalcation for the purpose of Section 523(a)(4) includes any behavior by a fiduciary, including innocent, negligent and intentional defaults of fiduciary duty resulting in a failure to provide a complete accounting. 97 F.3d at 1186-87 (*citing Woodworking Enters., Inc. v. Baird (In re Baird)*, 114 B.R. 198, 204 (BAP 9th Cir. 1990)). *Lewis* specifically overruled *In re Martin*, 161 B.R. 672 (BAP. 9th Cir. 1993), which had held the mere failure to use ordinary care in accounting for an asset does not constitute defalcation, and that there had to be a showing of some element of bad faith or reprehensible conduct. Thus, an individual is liable for defalcation where he personally used corporate funds or

8

transferred corporate assets to a corporate insider, even without the intent to defraud. Lewis, 97 F.3d at 1186-87. *Accord Jacks,* 266 B.R. at 787. The Monetary Transfers are therefore subject to the Arizona Trust Fund Doctrine regardless of Stanley Lund's intent with respect to the Biltmore Debt or with respect to any other debts of the Corporation. Stanley Lund's actions in effecting the Monetary Funds constitute defalcation while in a fiduciary capacity.

## **Damages**

Under the Trust Fund Doctrine, an officer of an insolvent corporation that receives preferential transfers is liable to each creditor of the corporation in the amount of that creditors' *pro rata* interest in the transfers. *Weinberg,* 410 B.R. at 35. Stanley Lund paid himself or insiders the sum of $97,018.30 from the Assets of the Corporation after the Corporation became insolvent. This amount is subject to the claims of Corporation's creditors. Biltmore Bank is entitled to its *pro rata* interest in the Monetary Transfers on account of Stanley Lund's breach of fiduciary duty.

As of the Petition Date, Biltmore Bank was owed the sum of $301,291.52, plus accrued post-judgment interest in the amount of $7,015.90, for a total amount of $308,307.42. According to the Claims Register, the total amount of creditors claims filed in the case is $685,857.84.[1] A significant portion of these claims appear to be debts owed by the Debtors personally and are not debts owed by the Corporation. Therefore, these claims should not be counted for purposes of determining the Biltmore Bank's *pro rata* interest in the Monetary Transfers. Further discovery is needed to determine which claims are claims against the Corporation. However, even if all claims that have been filed in this case were counted for purposes of the Trust Fund Doctrine

---

[1] Biltmore Bank does not waive any claim it may have to argue that certain of these claims may be invalid or held by insiders and should therefore not be counted under the Trust Fund Doctrine.

9
Case 2:09-ap-01577-CGC    Doc 19    Filed 04/12/10    Entered 04/12/10 14:03:57    Desc
Main Document    Page 9 of 11

damage analysis, Biltmore Bank's *pro rata* interest in the Monetary Transfers would be $43,658.24.[2] Accordingly, the Biltmore Bank should be granted a nondischargeable judgment against the Debtors, pursuant to 11 U.S.C. § 523(a)(4), in the amount of at least $43,658.24.

WHEREFORE, Biltmore Bank requests entry of judgment in favor of Biltmore Bank and against the Debtors as follows:

A.  Declaring the Debtors' obligation to Biltmore Bank to the extent of Biltmore Bank's *pro rata* share of the Monetary Transfers in the amount of at least $43,658.24 is nondischargeable, pursuant to 11 U.S.C. § 523(a)(4);

B.  Ordering that further proceedings be scheduled and conducted for the purpose of determining: (1) the liability of the Debtors to creditors of the Corporation for the transfer of other assets of the Corporation, including but not limited to the Assets described above; (2) whether a discharge in bankruptcy should be denied, pursuant to 11 U.S.C. §727(a)(2); (3) Biltmore Bank's *pro rata* interest in the Monetary Transfers; and (4) any other claims and causes of action not addressed in this Motion; and

C.  For such other and further relief the Court deems just and proper.

DATED this 12th day of April, 2010.

**COLLINS, MAY, POTENZA, BARAN & GILLESPIE, P.C.**


By Theodore P. Witthoft /021632
    Theodore P. Witthoft
    Attorneys for The Biltmore Bank of Arizona

---

[2] Biltmore Bank holds at least 45% of the claims against this estate. Therefore, Biltmore Bank is entitled to at least 45% of the aggregate amount of the Monetary Transfers (.45 X $97,018.30 = $43,658.24).

Copy of the foregoing mailed this
12th day of April, 2010, to:

Joseph W. Charles, Esq.
P.O. Box 1737
Glendale, Arizona 85311-1737
Attorneys for Debtors

Scott Zwillinger, Esq.
Zwillinger Greek Zwillinger & Knecht, PC
2425 East Camelback Road, Suite 600
Phoenix, Arizona 85016
Co-counsel for The Biltmore Bank of Arizona

/s/ Lisa Harnack