**JOSEPH W. CHARLES, P.C.**
**5704 West Palmaire Avenue**
**P.O. Box 1737**
**Glendale, Arizona 85311-1737**
**Tel: (623) 939-6546**
**Fax: (623) 939-6718**
**Email: LawOffice@joecharles.com**

Joseph W. Charles
State Bar #003038
Attorneys for Defendants/Debtors

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE THE MATTER OF: | Chapter 7 |
| STANLEY THOMAS LUND and JUNE MARIE LUND, aka LUND MORTGAGE, INC., | Case No. 2:09-bk-18416-CGC |
| | Adv. Proc. No. 2:09-ap-01577-CGC |
| Debtors. | **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| THE BILTMORE BANK OF ARIZONA, | |
| Plaintiff, | |
| vs. | |
| STANLEY THOMAS LUND and JUNE MARIE LUND, | |
| Defendants/Debtors. | |

    **COME NOW** the Defendants, **STANLEY THOMAS LUND** and **JUNE MARIE LUND**, by and through their counsel undersigned, and in Response to Plaintiff's Motion for Summary Judgment respectfully requests the court to deny the motion on the grounds that the facts in this case do not support a finding that the Defendant misappropriated trust funds.

- 1 -

This Response is based upon the following Memorandum of Points and Authorities, attached Statement of Facts, and attached affidavits.

**RESPECTFULLY SUBMITTED** this 13th day of May, 2010.

**JOSEPH W. CHARLES, P.C.**

By____/s/ Joseph W. Charles_____
**JOSEPH W. CHARLES**
Attorney for Defendant

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1. Background.**

Defendant Stanley Thomas Lund owned and operated Lund Mortgage, Inc. for approximately 11 years. (Affidavit of Stanley Lund ("Lund Affidavit") attached to the Defendant's controverting statement of facts as Defendant's Exhibit "A", §3). Plaintiff's recitation of the facts is a substantially true and accurate reflection of the last years of the business. However, Plaintiff distorts the factual basis in numerous ways.

**2. Factual inaccuracies.**

<u>Plaintiff incorrectly identified Stanley Lund as President/CEO of Lund Mortgage Team.</u>

First, Stanley Lund is not the President or CEO of Lund Mortgage Team. (Defendant's controverting statement of facts, "DCSOF," ¶ 11). The only evidence that he is the president/CEO of Lund Mortgage Team is a reference to a website in the

Plaintiff's Statement of Facts. However, this allegation is unsupported and clearly inaccurate based on the Corporation Commission Records submitted by Plaintiff and Mr. Lunds testimony. (DCSOF, ¶ 11).

<u>Plaintiff errantly represents to the Court that the deposition can only be interpreted so as to read that "nominal" value was given for the furniture and computers of Lund Mortgage, Inc.</u>

Plaintiff represents that "nominal" amounts were paid for the furniture and computers of Lund Mortgage, Inc., but these items were in fact sold for fair market value. (DCSOF ¶ 12). Early on in the deposition, Mr. Lund was asked about the sale of the equipment and how they were valued. Mr. Lund's full answer was "Just basically on what the market will bear for used furniture and used computer system. The furniture and computers were sold at once." (DCSOF ¶12). It wasn't until some 41 pages later that Mr. Zwillinger tried to trap Mr. Lund by giving him the either/or question of "Are we talking about tens of thousands of dollars or nominal amounts?" (DCSOF ¶ 12). Mr. Lund did not understand the legal meaning Mr. Zwillinger was likely attributing to the word. (DCSOF ¶12). Outside of the legal context, "nominal" can have different meanings such as, "Of, relating to, or being the amount or face value of a sum of money or a stock certificate, for example, and not the purchasing power or market value."

<u>Plaintiff suggests that Mr. Lund wasted and/or gave away valuable assets.</u>

The third inaccuracy alleged by the Plaintiff is contained in their 13th paragraph of their statement of facts. Plaintiff alleges that customer lists, records, relationships, files, intangible assets, and goodwill were given away without compensating Lund Mortgage, Inc. Plaintiff cites page 54, line 24 through page 55, line 11 to support their allegation. However, there is nothing in the deposition that references any of the items Plaintiff mentions. The Plaintiff has created these "assets" in their statement of facts. All the

items in this paragraph are theoretical, imagined, and unsupported by any evidence whatsoever. The only thing that can clearly be taken away from this section of the deposition is that Mr. Lund does not believe that the company had any assets besides the furniture and computers. (DCSOF ¶13).

<u>Plaintiff makes allegations of transfers of funds that are a matter of genuine material issues of fact.</u>

Lastly, Plaintiff's 15th and 16th paragraphs state as a fact that there were "corporate loan repayments and/or equity distributions." The deposition and affidavit of Mr. Lund make it clear that he understood the checks to be his pay. (DCSOF ¶15). His bookkeeper Kara Smith understood this to be the case as well. (DCSOF ¶15). The only evidence Plaintiff has that these checks were equity distributions is the ambiguous message on the memo of the check. However, Mr. Lund made it clear that this memo was never meant to mean that he was being repaid for his initial investment. (DCSOF ¶15). Furthermore, the Plaintiff does not even allege that the checks distributed to Mr. Lund match up in any way with the initial investment. In fact, the checks are actually quite erratic in their amount which supports Mr. Lund's interpretations of the payments. Importantly, Mr. Lund received approximately $20,000/month as salary when the economy was strong. According to the checks submitted by Plaintiff, Mr. Lund received only $31,867.06 in 2008 and $52,651.24 in 2009. In light of Mr. Lund's previous salary of approximately $240,000, Plaintiff's argument that Mr. Lund was somehow cashing out at the last moment is revealed to be highly suspect.

.   .   .


.   .   .

– 4 –

### 3. Argument

### A. Summary judgment standard.

Arizona law requires that two (2) prerequisites be met before a Motion for Summary Judgment may be granted. First, the entire record must reveal that no genuine dispute exists as to any material fact and that only one (1) inference can be drawn from the undisputed material facts; and second, based upon the undisputed material facts, the moving party is entitled to judgment as a matter of law. Rule 56(c), Ariz. R. Civ. P.; _Orme School v. Reeves_, 166 Ariz. 31, 802 P.2d 1000 (1990); _Nicoletti v. Westcor, Inc._, 131 Ariz. 140, 639 P.2d 330 (1982). Here, there are issues of material fact which would require a trial in this matter.

### B. Plaintiff's missing element

Defendant largely agrees with Plaintiff's recitation of the law. By Plaintiff's own admission they must prove that there was a fraud or defalcation for their claim to succeed. Without proving fraud or defalcation, their claim fails. _In re Niles_, 106 F.3d 1456 (9th Cir. 1997).

Plaintiff's argues the defalcation element in the paragraph titled, "The Biltmore Debt was caused by defalcation." In this section, Plaintiff makes a broad statement that "Using corporate funds for personal use would constitute defalcation when the corporation is insolvent." Plaintiff cites _Nahman v. Jacks_ (_in re Jacks_), 266 B.R. 728 (9th Cir. BAP 2001) for this law. However, the exact words the Court used were:

> **Jacks' use of corporate assets to guarantee his personal debt would constitute defalcation, as would his personal use of corporate funds. We see no reason why executing a corporate guaranty to one creditor for Jacks' own benefit, and not the corporation's, could not be a defalcation as to Zeus' other creditors.**

*Id.* at 737-738. The facts in Jacks are totally different than those presented to the Court in this matter. There is no allegation that corporate assets were used to guarantee personal debt. Furthermore, it is unclear exactly how Jacks used the corporate funds. In any event, the personal use of the corporate funds was not addressed in any detail. Lastly, the final conclusion of the Court was that there were material issues of fact and remanded it for that reason.

## C. Payments as salary and not distributions

Plaintiff cites *Oney v. Weinburg* (*in re Weinburg*), 410 B.R. 19 (9th Cir. BAP 2009) numerous times in their Motion. However, Plaintiff left out the most important and relevant portion of the opinion. When discussing whether payments from the company to the owner of the company were distributions or legitimate business expenses, and thus dischargeable, the opinion contained the following critical analysis:

> **[Plaintiff] argues that the largest of these payments should be considered distributions to shareholders rather than wages or other business expenses. [Plaintiff] does not clearly articulate in his briefs which payments he is referring to. However, the bankruptcy court found that '[the company] records and the account statements do evidence that there were significant business expenses paid [to the Defendant] which were clearly legitimate [company] expenses.**

> **For example, [Plaintiff] targeted [the company's] payment of various credit card bills of [the Defendant]. The bankruptcy court found that [the Defendant] had used his credit card for [the company] business purposes, and was then reimbursed by [the company] for those expenses, and that the reimbursements were not 'distributions.' In making this finding, the court 'carefully reviewed the various payments by [the company] [to the Defendant] from and after [the date of insolvency], and the account statements[.]' In other words, the bankruptcy court found, based upon the evidence, that the payments made after [the date of insolvency], were for legitimate business expenses.**

*Id*. at 34. This case and this analysis closely resembles the current matter before the Court.

Case 2:09-ap-01577-CGC    Doc 24    Filed 05/13/10    Entered 05/13/10 11:40:18    Desc
Main Document    Page 6 of 8

According to *Weinburg, supra*, if the payments were legitimate business expenses, they are not "distributions." Competent evidence exists in the form of Mr. Lund and Mrs. Smith's testimony that the payments were salary. There is circumstantial evidence as well. These payments were the only income Mr. Lund received and were far smaller than the income he was receiving when the company was doing well. The payments were erratic and do not conform to any type of payment plan. The Plaintiff has not even tried to demonstrate some type of evidence that the payments match the initial investment. The only evidence otherwise is a mere memo on the check that is ambiguous at best.

### 4. Conclusion

The Plaintiff must show that they are entitled to judgment as a matter of law and that there is no material issues of fact left for the Court to adjudicate. They have failed on both counts. The critical element that Mr. Lund committed a defalcation is woefully unsupported. Also, there remain many disputed facts such as whether the payments to Mr. Lund were compensation for his work or distributions of equity. Therefore, Defendant asks the court that the Motion for Summary Judgment be denied.

**JOSEPH W. CHARLES, P.C.**

By:     /s/ Joseph W. Charles
        **JOSEPH W. CHARLES**
        5704 West Palmaire Avenue
        Post Office Box 1737
        Glendale, Arizona  85311
        Attorney for Defendants/Debtors

The foregoing was electronically
filed with the U.S. Bankruptcy Court
and a copy was mailed this 13th day
of May, 2010, to:

Theodore P. Witthoft, Esq.
Collins, May Potenza, Baran & Gillespie, P.C.
201 N. Central Avenue, Suite 2210
Phoenix, AZ  85004-0022
Attorneys for Plaintiff


/s/ S. Borek_____