# UNITED STATES BANKRUPTCY COURT
# THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>**STANLEY and JUNE LUND,**<br><br>      Debtors.<br>_____<br><br>**THE BILTMORE BANK OF ARIZONA**<br><br>      Plaintiff,<br><br>v.<br><br>**STANLEY and JUNE LUND,**<br><br>      Defendants.<br>_____ | Chapter 7 Proceedings<br><br>Case No. 09-BK-18416-PHX-CGC<br><br>Adv. No. 09-01577-CGC<br><br><br>**UNDER ADVISEMENT**<br>**DECISION RE PARTIAL SUMMARY**<br>**JUDGMENT** |

## I. Introduction

Is there a basis to deny partial summary judgment? The Debtors agree with Biltmore Bank's legal standard, concede a majority of facts, and counter key facts in the matter solely with self serving declarations. Based on what's been presented to the Court by Biltmore Bank and the Debtors, there is no basis to deny partial summary judgment. The motion is granted in favor of Biltmore Bank.

## II. Facts

Most of the facts are undisputed.

The Debtors field for Chapter 7 relief on August 8, 2009. Lund Mortgage, Inc. is an "a/k/a" of the Debtors. The debts listed on the Debtors schedules include debts of the Debtors and debts of Lund Mortgage. Initially, Lund Mortgage was a sole proprietorship, but was converted to an S-Corporation in January 2001. Lund Mortgage operated as a broker for residential homes until it

closed on June 1, 2009.

Biltmore Bank and Lund Mortgage were parties to a "Wholesale Broker Agreement" which set forth the terms upon which Biltmore Bank agreed to fund loans originated and submitted to Biltmore Bank by Lund Mortgage. Biltmore Bank filed suit against Lund Mortgage in March 2007 alleging payment and other defaults constituting a breach of the Wholesale Broker Agreement. The Superior Court entered a final judgment against Lund Mortgage; awarding Biltmore Bank the principal amount of $291,046.52 and $10,245.00 for its incurred attorney fees and costs, plus post-judgment interest at the statutory rate of ten percent (10%) on both amounts. As of the petition date, the amount of the Biltmore Bank's judgment against Lund Mortgage was $301,291.52, plus accrued post-judgment interest in the amount of $7,015.90, for a total of $308,307.42.

The Debtors admit that Lund Mortgage became insolvent in September 2007 and stopped paying any debts it had incurred prior to that time. After becoming insolvent, the Debtors admit that Lund Mortgage issued the following checks:

| Date | Amount | Payee | Description | Check No. |
| --- | --- | --- | --- | --- |
| 11/14/2008 | $7,290.00 | Stan Lund | Owner Reimbursement | 1140 |
| 11/14/2008 | $500.00 | Stan Lund | [blank] | 1141 |
| 11/19/2008 | $3,575.00 | Stan Lund | Owner Reimbursement | 1149 |
| 11/26/2008 | $7,570.00 | Stan Lund | Owner Reimbursement | 1159 |
| 12/01/2008 | $3,653.35 | Stan Lund | Owner Reimbursement | 1165 |
| 12/12/2008 | $7,940.00 | Stan Lund | Owner Reimbursement | 1187 |
| 12/18/2008 | $1,338.71 | Stan Lund | Owner Reimbursement | 1200 |
| 01/02/2009 | $1,903.00 | Stan Lund | Owner Reimbursement | 1227 |
| 01/20/2009 | $3,120.00 | Stan Lund | Owner Reimbursement | unknown |
| 01/30/2009 | $3,571.10 | Stan Lund | Owner Reimbursement | 1320 |
| 02/13/2009 | $6,920.75 | Stan Lund | Owner Reimbursement | 1355 |
| 02/27/2009 | $4,048.19 | Stan Lund | Owner Reimbursement | 1434 |
| 03/13/2009 | $8,570.36 | Stan Lund | Owner Reimbursement | 1472 |
| 03/31/2009 | $4,048.19 | Stan Lund | Owner Reimbursement | 1518 |
| 04/15/2009 | $4,065.41 | Stan Lund | Owner Reimbursement | 1557 |
| 04/15/2009 | $1,278.48 | Stan Lund | Owner Reimbursement | 1558 |
| 04/30/2009 | $2,923.10 | Stan Lund | Owner Reimbursement | 1617 |
| 04/30/2009 | $310.00 | June Lund | Owner Reimbursement | 1618 |
| 05/15/2009 | $4,076.22 | Stan Lund | Owner Reimbursement | 1668 |
| 05/15/2009 | $3,740.22 | Stan Lund | Owner Reimbursement | 1669 |
| 05/29/2009 | $4,076.22 | Stan Lund | Owner Reimbursement | 1714 |
| 05/15/2009 | $12,500.00 | Lisa Lund | Gift | 1672 |

Though admitting that Lund Mortgage issued the checks, the Debtors dispute the accuracy of the description line.

Biltmore Bank asks for partial summary judgment to determine two issues:

(1) Are the Debtors liable to the creditors of the Lund Mortgage for having received the monetary transfers under Arizona's "trust fund doctrine"; and
(2) Is the Biltmore Bank is entitled to a nondischargeable judgment against the Debtors, pursuant to 11 U.S.C. § 523(a)(4), in the amount of Biltmore Banks' pro rata interest in the monetary transfers.

**III. Analysis**

Summary judgment shall be granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. Rule 56(c); Fed. R. Bankr. P. Rule 7056(c). "[T]he mere existence of some alleged factual dispute ... will not defeat [a] ... motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The moving party bears the initial burden of demonstrating to the court that no genuine issue of material fact exists and to further show that the moving party is entitled to judgment in their favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show that there are specific facts creating a genuine issue for trial. *Id.* at 324. However, when the nonmoving bears the burden of proof, "the burden on the moving party may be discharged by 'showing'- that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Here, the legal standard is not in dispute. Arizona has adopted the trust fund doctrine ("Trust Fund Doctrine"). *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185-86 (9th Cir. 1996); *Valley Bank v. Malcolm*, 204 P. 207, 211 (Ariz. 1922). The Trust Fund Doctrine provides that all assets of a corporation, immediately upon that corporation's insolvency, constitute a trust fund that exists for the benefit of the corporation's creditors. *Id.* Under the Trust Fund Doctrine, after a corporation becomes insolvent, no rights may be created, either voluntarily or by operation of law, whereby one creditor is given an advantage over others. *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 29 (9th Cir. BAP 2009) (citing *A.R. Teeters & Assocs. V. Eastman Kodak Co.*, 836 P.2d 1034, 1041 (App. 1992)). The Bankruptcy Appellate Panel of the Ninth Circuit held that the Arizona's Trust Fund Doctrine implicated an express trust sufficient for purposes of the application of 11 U.S.C. § 523(a)(4). *Weinberg*, 410 B.R. at 28; *Nahman v. Jacks (In re Jacks)*, 266 B.R. 728 (9th Cir. BAP

2001).

As, the Biltmore Bank points out, Lund Mortgage was admittedly insolvent as of early September 2007. Thus, argues the Biltmore Bank, once Stan Lund knew that Lund Mortgage was administratively insolvent, he, as an officer of the corporation, had a fiduciary duty to the creditors. He breached this duty, concludes Biltmore Bank, when he paid himself or insiders the sum of $97,018.30 from the assets of the Lund Mortgage.

The Debtors do not challenge Biltmore Bank's legal standard, but instead challenge the facts used to reach the legal conclusion. The Debtors challenge the characterization of the checks claiming that they were salary not distributions. Accordingly, they can be categorized as business expenses and are therefore not distributions under *Weinberg*. Biltmore Bank counters the Debtors assertions by providing the Court with Mr. Lund's 2008 w-2 from Lund Mortgage and Lund Mortgage's 2008 tax return – both of which show that Lund Mortgage paid Mr. Lund $18,000 in wages.

To support their claim, the Debtors rely on the declarations of Mr. Lund and Kara Smith, Lund Mortgage's bookkeeper. These declarations are insufficient. Courts have held "self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001) (citing *United States v. Shumway*, 199 F.3d 1093 (9th Cir. 1999)). Any affidavit that is worth submitting is probably self serving. However, "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publishing Clearing House, Inc*., 104 F.3d 1168, 1171 (9th Cir. 1997); *see also In Re Caneva*, 550 F.3d 755 (9th Cir, 2008); *Nillson v. City of Mesa*, 503 F.3d 947 (9th Cir. 2007).

Here, the Mr. Lund's allegations that the payments were salary rest solely on his and Kara Smith's declarations. These declarations have no corroborating evidence apart from the declarations. By comparison, Biltmore Bank presents a variety of evidence to support its claim that the checks were distributions, e.g., the memo line of the checks themselves, Mr Lund's Deposition, and the 2008 tax returns and w-2s. As the affidavits submitted are insufficient to create a genuine

- 4 -

issue of material fact, summary judgment is appropriate.

**IV. Conclusion**

Seeing no material issue of facts and the Debtors having conceded that there is no genuine dispute regarding the applicable law, partial summary judgment is granted in favor of Biltmore Bank.

Counsel for plaintiff is to submit and serve a form of judgment.

So ordered.

DATED: August 10, 2010

_____
Charles G. Case II
UNITED STATES BANKRUPTCY JUDGE

**COPY** of the foregoing mailed by the BNC and/or sent by auto-generated mail to:

THE BILTMORE BANK OF ARIZONA
C/O THEODORE P. WITTHOFT
COLLINS MAY POTENZA BARAN & GILLESPIE
201 N. CENTRAL AVENUE
22ND FLOOR
PHOENIX, AZ 85004-0608

MICHAEL W. CARMEL
MICHAEL W. CARMEL, LTD.
80 E. COLUMBUS AVE
PHOENIX, AZ 85012-4965

JOSEPH W. CHARLES
LAW OFFICES OF JOSEPH W. CHARLES, P.C.
PO BOX 1737
GLENDALE, AZ 85311-1737,
Attorneys for Debtors

STANLEY THOMAS LUND
JUNE MARIE LUND
18008 WEST NARRAMORE ROAD

GOODYEAR, AZ 85338,
Debtors